UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROSALIE L.,

          Plaintiff,

          v.                              **DECISION AND ORDER**
                                                        20-CV-740S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

        1.     Plaintiff Rosalie L.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.     Plaintiff protectively filed her applications for benefits under Titles II and XVI of the Act on March 28, 2017. (R.[2] at 188, 190.) Plaintiff alleged disability beginning on December 8, 2016, due to grand mal seizure, previously being in a coma, high blood pressure, epilepsy, diabetes type II, ulcers, neuropathy, memory loss related to coma, GERD, depression, liver function issues, necrosis, high cholesterol, and chronic obstructive pulmonary disease. (R. at 82.) Plaintiff's applications were denied. Plaintiff

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by his first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Stephen Cordovani held a hearing on February 7, 2019, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 36-80.) Vocational Expert Dawn Blythe also appeared and testified by telephone. At the time of the hearing, Plaintiff was 47 years old, with a twelfth-grade education and prior work experience as a taxicab dispatcher. (R. at 50, 81.)

3.      The ALJ considered the case de novo and, on March 20, 2019, issued a written decision denying Plaintiff's application for benefits. (R. at 15-30.) On April 17, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on June 16, 2020, challenging the Commissioner's final decision.[3]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 12, 15.) Plaintiff filed a response on April 29, 2021 (Docket No. 16), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to

---

[3] The ALJ's March 20, 2019, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

"more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

3

whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

        8.        The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

        9.        Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20

4

C.F.R. § 416.920(a)(4); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of December 8, 2016. (R. at 17.) At step two, the ALJ found that Plaintiff has the severe impairments of diabetes mellitus with neuropathy, seizure disorder, migraines, COPD, degenerative disc disease of the low back, persistent depressive disorder, and anxiety disorder with panic attacks. (<u>Id.</u>)

11. The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 18.)

12. Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, except with

> no ramps, stairs, or balancing activities; occasional kneeling, crouching, crawling; no ladders, ropes, or scaffolds; no work at unprotected heights or around dangerous moving mechanical parts; no driving or operation of heavy equipment; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; no exposure to extreme heat or cold; can understand, remember and carry out simple instructions and tasks; can have no supervisory duties, no independent decision-making or goal setting, no strict production quotas, and only minimal changes in work routine and processes; can have only occasional interaction with supervisors and co-workers and can have no or only incidental interaction with the general public; can perform no team or tandem work; and will be off task no more than 10 percent of the work day.

(R. at 21.)

13. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 28.) At step five, the ALJ found that there is a significant number of jobs in the national economy that Plaintiff can perform. (Id.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 29.)

14. Plaintiff argues that the ALJ's determination that Plaintiff would be off-task ten percent of the time was not supported by substantial evidence and that the ALJ erred in relying on an opinion based on an examination done before Plaintiff underwent imaging of her spine. Defendant argues that the ALJ's decision is based on substantial evidence.

15. Plaintiff first argues that the ALJ's determination that Plaintiff would be off-task "no more than 10 percent of the workday" is not based on substantial evidence.

16. "Specific RFC assessments, like percentage of time off-task, must be based on evidence in the record, not on an 'ALJ's own surmise.'" Joshua K. v. Comm'r of Soc. Sec., No. 19-CV-66-FPG, 2021 WL 235886, at *2–3 (W.D.N.Y. Jan. 25, 2021) (quoting Cosnyka v. Colvin, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order). An ALJ can assign a percentage of time off-task, but it must make clear its reasoning and the basis for its finding in the record. See Johnson v. Colvin, No. 14-CV-580S, 2015 WL 5167162, at *4 (W.D.N.Y. Sept. 3, 2015), aff'd, 669 F. App'x 44 (2d Cir. 2016) (affirming where "the ALJ's reasoning for assigning a percentage which reflected Plaintiff's ability to maintain employment despite the potential to be minimally slower than average is clear from his decision," and where ALJ highlighted Plaintiff's prior ability to maintain a production line job and Plaintiff's thirteen year work history, considered the opinion of a consultative psychologist who opined that Plaintiff would have "minimal to *no limitations*" in following and understanding simple directions, performing simple tasks independently, and

maintaining attention and concentration)). The question, then, is whether the ALJ's assessment that Plaintiff would be 10 percent off-task is based on medical opinions and supported by citations to the record or whether the ALJ has simply assigned that number arbitrarily.

17. Here, Plaintiff was diagnosed with severe depressive disorder and anxiety disorder, in addition to physical complaints including diabetes, hypertension, and seizure disorder. Plaintiff underwent a psychological evaluation on June 15, 2017. Dr. Janine Ippolito observed that Plaintiff appeared extremely fatigued, was disheveled and unkempt, was poorly groomed, and had difficulty keeping her eyes open. (R. at 584.) Dr. Ippolito observed that Plaintiff's attention and concentration were impaired due to her fatigue and difficulty focusing. Dr. Ippolito further opined that Plaintiff would have moderate limitations in understanding and remembering complex instructions, using reason to make work-related decisions, interacting with supervisors, coworkers and the public, sustaining an ordinary routine and regular attendance at work, regulating her emotions, controlling her behavior, and maintaining her personal hygiene. (R. at 585.) Dr. Ippolito opined that Plaintiff's psychological problems may significantly interfere with her ability to function on a daily basis (R. at 585.)

18. The ALJ found persuasive Dr. Ippolito's opinion that Plaintiff had moderate limitations in all of the above-mentioned areas, because it was supported by Dr. Ippolito's examination and generally consistent with other evidence in the record.[4] (R. at 27.) In assessing one part of Plaintiff's RFC, her limitations in interacting with supervisors,

---

[4] Because Plaintiff filed her application for benefits after March 31, 2017, the ALJ applied the revised regulations, which instruct the ALJ not to give specific "weight" to medical opinions, but rather to consider their "persuasiveness" based on their supportability and consistency with the record, among other factors. See 20 C.F.R. § 404.1520c(a)-(c) (2017).

coworkers, and the public, the ALJ expressly cited to Dr. Ippolito's opinion as supporting his finding. (R. at 25.)

19. The ALJ did not refer to Dr. Ippolito's opinion to support his off-task determination. The record does not contain any opinion about how much time Plaintiff would be off-task in a work setting. In justifying the assessment that Plaintiff would be off-task no more than 10 percent of the workday, the ALJ stated that this assessment took into account Plaintiff's headaches, staring spells, and poor cognition. The ALJ did not explain his 10 percent off-task assessment in light of Dr. Ippolito's opinion, even though this opinion possibly provides support for a greater limitation. Dr. Ippolito specifically linked Plaintiff's attention and concentration deficits not to headaches or poor cognition—the issues the ALJ appears to have considered relevant—but to fatigue and emotional distress. (R. at 585.) Dr. Ippolito further observed that Plaintiff's speech intelligibility was slightly delayed, that her expressive language was marked by "word-finding difficulties," and that her attention and concentration and recent and remote memory were impaired. (R. at 584.)

20. If an ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Soc. Sec. Ruling 96–8p (1996). "While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' [s]he cannot simply selectively choose evidence in the record that supports [her] conclusions." Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting Gecevic v. Secretary of Health & Human Servs., 882 F. Supp. 278, 286 (E.D.N.Y.1995) (quoting Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Here, the ALJ relied on Dr. Ippolito's opinion for some elements of Plaintiff's

RFC, but did not explain how it related to his 10 percent off-task determination, something that is not clearly consistent with Dr. Ippolito's assessment. A plaintiff is "entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits." Dioguardi, 445 F. Supp. 2d at 297. The ALJ did not provide such an explanation. This Court therefore finds that the ALJ's 10 percent off-task assessment is not supported by substantial evidence. Remand is warranted on this basis.

21.     Plaintiff also argues that the ALJ erred in relying on medical opinions that were generated without the benefit of later imaging results. Because remand is warranted on other grounds, this Court will not consider this argument here. On remand, the ALJ shall consider this argument to the extent it deems necessary.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

SO ORDERED.

Dated:      September 16, 2021
            Buffalo, New York

                                            s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge